IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | 1:06CR474 |
| | ) | |
| RODNEY ANTON WILLIAMSON | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Rodney Williamson's Motions for Reconsideration of this Court's Order (Doc. # 287) denying his Motion for New Trial and his Motion for Appointment of Counsel. For the reasons stated below, Mr. Williamson's Motions for Reconsideration (Docs. # 293 & 294) will be DENIED.

I.

Mr. Williamson was convicted on August 17, 2007 for conspiracy to distribute in excess of 400 kilograms of cocaine hydrochloride. On December 7, 2007, he was sentenced to the statutory minimum of life imprisonment, pursuant to 21 U.S.C. § 841(b)(1)(A). Mr. Williamson's conviction and sentence are currently on appeal before the Fourth Circuit. (Docket Nos. 08-4055 & 11-5179).[1]

---

[1] The lengthy procedural history of Mr. Williamson's Sixth Amendment-based appeal can be found in this Court's Opinion and Order of November 21, 2011, and is incorporated herein by reference. (Doc. # 291). While addressing Mr. Williamson's Sixth Amendment arguments, the Fourth Circuit issued a limited remand to this Court for the purpose of determining in the first instance whether Mr. Williamson's Fifth Amendment rights had been violated. United States v. Williamson, No. 08-4055, 2011 WL 3328491 (4th Cir. Aug. 3, 2011). Following a hearing on October 13, 2011, this Court found that Mr. Williamson's Fifth Amendment rights were not violated (Doc. # 291). Mr. Williamson's appeal of that decision has been consolidated with his already-pending appeal.

During the pendency of his appeal, Mr. Williamson filed a *pro se* motion for a new trial pursuant to FED. R. CRIM. P. 33 (Doc. # 271), arguing that the United States did not provide exculpatory information to him before trial.[2] Mr. Williamson filed several other motions relating to his request for a new trial, including a motion for appointment of counsel (Doc. # 275), a motion for production of documents (Doc. # 272), a motion for discovery (Doc. # 273), and a motion for default judgment (Doc. # 281). This Court entered an opinion on September 21, 2011 denying Mr. Williamson's motion for a new trial, and denying Mr. Williamson's remaining motions as moot. (Doc. # 287).

During a hearing on October 13, 2011, Mr. Williamson was granted a 40-day extension for filing a motion for reconsideration of the September 21 Order. Mr. Williamson then timely filed motions for reconsideration of his Motion for New Trial (Doc. # 294), and of his Motion for Appointment of Counsel (Doc. # 293). The government responded to Mr. Williamson's motion for reconsideration (Doc. # 301), and Mr. Williamson filed a reply (Doc. #303).[3] The matter is now ripe for

---

[2] This Court has jurisdiction to consider a motion for a new trial, despite the pendency of Mr. Williamson's appeal, and may either deny the motion or certify to the Fourth Circuit its intention to grant the motion. United States v. Russell, 971 F.2d 1098, 1112 n.28 (4th Cir. 1992).

[3] Mr. Williamson filed a motion for leave to file a reply brief. This motion (Doc. # 302) is GRANTED, and his reply brief was considered in deciding this motion. It is additionally noted that Mr. Williamson has filed a Motion for Default Judgment (Doc. # 300), seeking disposition by default of his motions for reconsideration. Default judgment is a procedural mechanism in civil cases, pursuant to FED. R. CIV. P. 55, allowing the court to enter judgment against a party who has failed to defend a claim where another party has sought affirmative relief against it. The rule is not applicable here; the Court must decide Mr. Williamson's motion on its merits, whether the government responded or not. Accordingly, Mr. Williamson's Motion for Default Judgment (Doc. #300) is DENIED.

consideration.

II.

The conspiracy for which Mr. Williamson was convicted was immense. Over the course of several years, Mr. Williamson and co-conspirators trafficked large quantities of cocaine in North Carolina and other states, along with the U.S. Virgin Islands.[4] During the course of Mr. Williamson's trial (the "North Carolina trial"), the government presented eight witnesses - five co-conspirators and three law enforcement agents - who testified regarding Mr. Williamson's role in the conspiracy.[5] The government also presented a recording of a conversation between Mr. Williamson and cooperating witness Edison Alberty, which is the subject of Mr. Williamson's pending appeal. The evidence implicated Mr. Williamson in numerous large-scale transactions involving drugs transported from Mexico via Texas, and from the Virgin Islands to North Carolina and New York City.

As part of the same investigation resulting in Mr. Williamson's indictment, other individuals, including Mr. Glenson Isaac, were indicted in the District of the Virgin Islands. Accordingly, some of the same facts and same witnesses were involved in the ensuing trial in that District (the "Virgin Islands trial"), which took place after Mr. Williamson's trial. Mr. Isaac, who testified at Mr. Williamson's trial and before the North Carolina grand jury, also testified in the Virgin Islands trial.

---

[4] A more thorough recitation of the underlying facts can be found in this Court's prior Order (Doc. # 287), and in the Government's trial brief (Doc. # 113).

[5] Mr. Williamson and his attorney elected not to present any evidence.

3

At the North Carolina trial, Mr. Isaac testified regarding "two or three" 10-kilogram cocaine transactions involving drugs smuggled from the Virgin Islands to Mr. Williamson in North Carolina. Another witness, Alexis Wright, who had testified before the North Carolina grand jury, was not called in the North Carolina trial but testified in the Virgin Islands trial. The grand jury testimony of these individuals was disclosed to Mr. Williamson pursuant to this District's open-file policy.

In his initial motion, Mr. Williamson argued that he was entitled to a new trial based on newly discovered evidence: Ms. Wright's testimony in the Virgin Islands trial. Mr. Williamson acknowledged in his first motion that the "evidence that serves as the basis for this motion did not exist at the time of Defendant's trial and only became available during a subsequent trial." Doc. # 271 at 7. After reviewing Mr. Williamson's arguments and the government's response, this Court denied Mr. Williamson's motion for a new trial, finding that there was no indication that the government had withheld evidence, and that the substance of Ms. Wright's testimony at the Virgin Islands trial did not satisfy the requirements for a new trial under United States v. Custis, 988 F.2d 1355, 1359 (4th Cir. 1993).

In his present motion, Mr. Williamson advances two arguments. First, based on his contention that exculpatory evidence was "withheld," Mr. Williamson contends that the Court should have applied Brady v. Maryland, 373 U.S. 83, 87 (1963), instead of Custis, to his initial motion. Second - though he did not make this argument in his initial motion - Mr. Williamson argues that he is entitled to a

4

new trial because the prosecution withheld additional exculpatory evidence, as demonstrated by an inconsistency between Mr. Isaac's Virgin Islands trial testimony and his North Carolina trial testimony.[6] For the reasons discussed below, neither of these arguments has merit.

III.

With regard to Ms. Wright's testimony, Mr. Williamson has presented no additional argument or evidence warranting reconsideration of this Court's prior decision. Because there is absolutely no indication that any evidence was suppressed by the government, the Custis test was correctly applied. See United States. v. Higgs, 663 F.3d 726, 735 (4th Cir. 2011) (suppression of evidence is an essential element in establishing a Brady violation). Ms. Wright's subsequent Virgin Islands trial testimony was plainly not in the possession of the government at the time of Mr. Williamson's trial, nor does it raise the inference that the government had, but did not turn over, exculpatory evidence in its possession prior to the North Carolina trial. Ms. Wright's grand jury testimony and notes from her debriefing were disclosed to defense counsel. Based on that evidence, Mr. Williamson could have called her to testify at the North Carolina trial, but did not.

---

[6] Mr. Williamson's appendix includes numerous trial transcript pages involving at least three different witnesses and one motion hearing, but lacks cover pages indicating the venue, date, and testifying witness. Based on the names used during questioning, the Court has endeavored to determine which transcript pages correspond to each witness and trial. Because, even crediting Mr. Williamson's representation that the testimony referenced is that of Mr. Isaac in the Virgin Islands trial, it is determined that a new trial is not warranted, the Court accepts Mr. Williamson's representation as to the source and authenticity of these transcripts, for the limited purpose of deciding this motion.

5

In short, the correct test was applied, and the determination that Ms. Wright's subsequent testimony does not warrant a new trial will not be revisited.

IV.

Mr. Williamson's second argument centers around purported inaccuracies in Mr. Isaac's North Carolina trial testimony. Specifically, Mr. Isaac testified at the North Carolina trial that he and Mr. Williamson met in the Virgin Islands in late 2004, and that they later spoke in Burlington, North Carolina regarding a cocaine purchase. Around a month after the Burlington conversation, Mr. Isaac sold Mr. Williamson ten kilograms of cocaine. Doc. #226 at 31. And at some point in "early 2005," or "a month or two" after the initial transaction, the two men engaged in another ten kilogram transaction. Id. at 86. At the Virgin Islands trial, Mr. Isaac testified that drugs were sent to the United States monthly in June through September 2004, and in December 2004, but that he believed the next shipment did not occur until May 2005 because of a "drought" in cocaine imports due to increased enforcement. This inconsistency in relevant dates, Mr. Williamson contends, demonstrates not only that Mr. Isaac's North Carolina testimony was false, but also that the prosecution knew that the testimony was false.[7] In addition, Mr. Williamson claims that a recording between Mr. Isaac and

---

[7] Mr. Williamson attempts to buttress this argument by additional testimony and evidence that he contends demonstrates that Mr. Isaac's testimony regarding Mr. Williamson's involvement in drug shipments from the Virgin Islands was false. Several of Mr. Williamson's arguments mischaracterize the testimony as provided in his appendix. (Doc. #294-1). As one example, he claims that Louis Rabsatt testified that he "met" Mr. Williamson in 2005. Rather, Rabsatt testified that he met Mr. Williamson in the Virgin Islands, and later *visited North Carolina* in 2005. Mr.

6

another individual, in which Mr. Isaac discussed an incident in which he attempted to rob Mr. Williamson, was not disclosed to the defense.

A.

As an initial matter, Mr. Williamson could have raised the argument pertaining to Mr. Isaac's testimony in his initial Rule 33 motion. Cf. United States v. Williams, 674 F.2d 310, 313 (4th Cir. 1982) (denying motion for reconsideration in a Section 2255 proceeding where the "same arguments could have been raised before the district court initially . . . but . . . were not"); United States v. Iacaboni, 667 F. Supp. 2d 215, 218 (D. Mass. 2009) (denying motion for reconsideration of denial of Rule 33 motion because such motions "are not a vehicle for resuscitating a motion with 'additional arguments' that could and should have been raised previously"). Mr. Williamson does not represent that Mr. Isaac's testimony was unavailable to him at the time of his initial motion; indeed, his motion is based on testimony from the same trial which formed the basis of his initial motion. Nonetheless, keeping in mind Mr. Williamson's *pro se* status, the merits of this argument will be considered.

B.

As discussed in this Court's September 21, 2011 Memorandum Order (Doc. # 287), the standard governing whether newly discovered evidence warrants a

---

Williamson also attaches unauthenticated customs records which he claims demonstrate that he was not in the Virgin Islands in 2004, and therefore Mr. Isaac's testimony that they met at that time was false. There is no indication that these records are complete, nor that they were unavailable to Mr. Williamson at the time of his trial.

7

new trial is set forward in Custis, 988 F.2d at 1359. Mr. Williamson points out, however, that the Custis standard only applies when the evidence is new to both the prosecution and the defense. He contends that the government either knowingly allowed false testimony, or suppressed exculpatory evidence, such that Brady, 373 U.S. at 87, or Giglio v. United States, 405 U.S. 150, 154 (1972) should apply. This argument fails.

Though the government's knowing use of false testimony would require the government to demonstrate that there is no reasonable likelihood such testimony could have affected the judgment of the jury, Giglio, 405 U.S. at 154, Mr. Williamson has made no credible showing that Mr. Isaac testified falsely in the North Carolina trial. In order to take advantage of the Giglio standard, the defendant must first demonstrate that a witness did in fact give false testimony. United States v. Griley, 814 F.2d 967, 971 (4th Cir. 1987) ("A defendant seeking to vacate a conviction based on perjured testimony must show that the testimony was, indeed, perjured."). Second, the defendant must show that the government "knew or should have known" that the testimony was false, and either solicited such testimony or allowed it to pass uncorrected. United States v. Kelly, 35 F.3d 929, 933 (4th Cir. 1994). Importantly, the Fourth Circuit has held that "[m]ere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony"; an inconsistency can result from innocent mistake or failed recollection rather than falsity. United States v. Griley,

814 F.2d 967, 971 (4th Cir. 1987).

The record is bereft of any evidence suggesting that Mr. Isaac's testimony in North Carolina was false. Mr. Isaac's testimony regarding the major facts of the conspiracy, including the individuals involved and the methods of transporting the drugs, is consistent between the two trials. Indeed, Mr. Isaac testified at the Virgin Islands trial that a June 2005 drug shipment was sent to Mr. Williamson via Kerry Woods, the same courier named in the North Carolina trial. See Doc. # 294-1 at 93. That testimony given *after* the North Carolina trial differed slightly in the relevant dates (which were previously described as "early 2005" rather than June 2005) does not lead to the conclusion that Mr. Isaac testified falsely at the North Carolina trial. Cf. Griley, 814 F.2d at 971. And any inconsistency in Mr. Isaac's testimony of dates on which shipments to Mr. Williamson occurred is marginal, at best.

In addition, because Mr. Williamson's defense counsel did not confront any inconsistencies between Mr. Isaac's testimony and his grand jury testimony at the North Carolina trial, it appears that the grand jury testimony - which was provided to defense counsel and referenced at the North Carolina trial - was consistent with the North Carolina trial testimony. See Doc. # 226 at 102. Thus, to the extent there is any inconsistency, it arose *after* the North Carolina testimony was given, and the government could not have known of it at the time of Mr. Williamson's trial. Any later discrepancy does not create an inference that Mr. Isaac's North

Carolina testimony was false, let alone that the government should have been aware of any such discrepancy at the time of his testimony.

Because it is beyond dispute that the government did not knowingly offer false testimony, the Giglio test does not apply to Mr. Williamson's motion for a new trial.

C.

Mr. Williamson also argues that Brady should apply, arguing that the government withheld two types of exculpatory evidence: 1) Mr. Isaac's inconsistent testimony at the Virgin Islands trial, and 2) a recording between Mr. Isaac and another individual in which Mr. Isaac's attempted robbery of Mr. Williamson is discussed.[8]

Due process requires that the government disclose evidence favorable to an accused upon request, "where the evidence is material either to guilt or punishment." Brady, 373 U.S. at 87. In order to establish a Brady violation, Mr. Williamson must demonstrate that: "(1) that the evidence is favorable, either because it is exculpatory or impeaching; (2) that the government suppressed the evidence; and (3) that the evidence was material to the defense." Higgs, 663 F.3d at 735 (citing Strickler v. Greene, 527 U.S. 263, 281-82 (1999)). As to the second prong, "[s]uppressed evidence is information 'which had been known to the prosecution but unknown to the defense.'" Spicer v. Roxbury Corr. Inst., 194 F.3d

---

[8] This recording was discussed at the Virgin Islands trial.

547, 557 (4th Cir. 1999) (quoting United States v. Agurs, 427 U.S. 97, 103 (1976)) (emphasis added). Accordingly, there is no Brady violation where "the defense already possesses the evidence." United States v. Higgs, 663 F.3d 726 (4th Cir. 2011); see also United States v. George, No. 10-4515, 2012 WL 541526 (4th Cir. Feb. 21, 2012) (no "suppression" and therefore no Brady violation, with respect to interview notes that were turned over to defense counsel).

For the evidence to be "material," the nondisclosure must have been "so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." Strickler, 527 U.S. at 281. A "reasonable probability" of a different result is shown "when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.' " Kyles v. Whitley, 514 U.S. 419, 434 (1995) (quoting United States v. Bagley, 473 U.S. 667, 678 (1985)).

As to Mr. Williamson's argument regarding Mr. Isaac's Virgin Islands trial testimony, it fails for the same reasons that Mr. Williamson's argument that the Brady standard should apply to Ms. Wright's testimony fails. There is simply nothing in the record to suggest that at the time of Mr. Williamson's trial, the government was in possession of any statement by Mr. Isaac that Mr. Williamson's defense counsel was not. As described above, Mr. Isaac's grand jury testimony was provided to defense counsel and used during cross-examination of Mr. Isaac. In short, Mr. Williamson cannot show that evidence was withheld simply by

exploiting a minor difference in detail between Mr. Isaac's subsequent testimony and his North Carolina trial testimony.

As to the recording of Mr. Isaac's discussion of his attempt to rob Mr. Williamson, such evidence is not material.[9] Though Mr. Williamson is correct that impeachment evidence may be considered in the Brady analysis, *cumulative* impeachment evidence is not material. United States v. Hoyte, 51 F.3d 1239, 1243 (4th Cir. 1995); George, 2012 WL 541526, at *4 (evidence that "perhaps could have provided counsel with another path to make the same point" was not material). Here, Mr. Isaac testified at length in the North Carolina trial regarding his attempted robbery of Mr. Williamson. (Doc. #226 at 90-91, 97-99). Any recording of Mr. Isaac mentioning such events - assuming it were even admissible - would therefore have been cumulative of this testimony. The fact that Mr. Isaac's relationship with Mr. Williamson had deteriorated to the point of retribution, and the potential bias inherent in that failed relationship, was before the jury. In light of the evidence presented to the jury regarding Mr. Isaac's dispute with Mr. Williamson, Mr. Isaac's past criminal record, and Mr. Isaac's personal benefit in testifying, any additional impeachment would have been cumulative.

Finally, Mr. Williamson was convicted after testimony from not only Mr. Isaac but also testimony from four other co-conspirators, along with three law

---

[9] It is not clear from the record whether or not this recording was provided to Mr. Williamson's counsel. It is unnecessary to decide that issue: because the recording is immaterial, there would have been no Brady violation even if it had been withheld.

12

enforcement agents, regarding a vast conspiracy involving repeated transactions of large quantities of drugs.[10] In light of this evidence, there no reasonable probability that *additional* impeachment of Mr. Isaac would have produced a different verdict. In short, the value of this evidence comes nowhere close to the threshold of undermining confidence in the outcome of trial. Accordingly, there was no Brady violation with respect to the recording of Mr. Isaac's statements about the attempted robbery.

D.

Finally, to the extent that Mr. Isaac's later testimony regarding dates of drug exports to the United States is "newly discovered evidence," this evidence, as discussed in the prior Memorandum Order, must meet the test set forward in Custis:

> a) the evidence must be . . . newly discovered; b) facts must be alleged from which the court may infer diligence on the part of the movant; c) the evidence relied upon must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal.

988 F.2d at 1359 (citations omitted). Mr. Williamson cannot demonstrate that Mr.

---

[10] To put Mr. Isaac's testimony about "two or three" transactions in perspective, other witnesses testified in great detail regarding Mr. Williamson's cocaine distribution activities. Seth Swaney estimated that he received one to two kilograms from Mr. Williamson "weekly" in late 2003 and admitted that he and Mr. Williamson were involved in a business relationship dealing cocaine for an extended period of time (Doc. #225 at 20-26). Edison Alberty testified that he purchased anywhere from half a kilogram to five kilograms of cocaine from Mr. Williamson on multiple occasions (Doc. #226 at 179-181). Michael Sealy testified regarding Mr. Williamson's involvement with a five kilogram transaction in New York, along with Mr. Williamson's need for cars with "stash" compartments (Id. at 130-131). Finally, Mr. Rabsatt testified regarding his role in supplying Mr. Williamson with drugs from the Virgin Islands (Id. at 117-121).

13

Isaac's subsequent testimony meets this standard. For the same reasons discussed above with respect to the Brady analysis, the testimony would be, at best, impeaching, is not material, and would not have "probably produce[d] an acquittal" if a new trial were granted. Accordingly, Mr. Williamson is not entitled to a new trial on this basis either.

In sum, none of the materials provided by Mr. Williamson would warrant a new trial, and his Motion for Reconsideration (Doc. # 294) is DENIED.

V.

Mr. Williamson also seeks reconsideration of his motion for appointment of counsel, arguing that he has a right to assistance of counsel in order to pursue his motion for a new trial. Mr. Williamson relies upon a Seventh Circuit case in his argument, but Seventh Circuit law is not controlling in this Circuit, and Fourth Circuit law on point differs. In United States v. Williams, 165 F.3d 913, 1998 WL 786200 (4th Cir. 1998), the defendant filed a motion for a new trial seven months after his verdict and three months after his direct appeal was noticed. Id. at *2. The court concluded that the defendant did not have a right to counsel on his Rule 33 motion in those circumstances. Id. First, because his appeal was already in progress, the motion was not necessary to sharpen issues for appeal, or to give the Court an opportunity to address matters prior to direct appeal. Id. In addition, the right to counsel attaches only at "critical stages" through direct appeal, and does not extend to collateral review. Where a defendant's motion for a new trial is

14

"more akin to a collateral proceeding and [is] not part of any critical process leading from trial to direct appeal," appointment of counsel is not warranted. Id. Finally, the court found that because the defendant was able on his own to discover - and brief the court regarding - the new facts he believed entitled him to a new trial, it was not "dangerous" for defendant to be proceeding without counsel. Id. Each of these circumstances applies with equal force in this case. Accordingly, Mr. Williamson does not have a right to appointment of counsel for assistance with his motion for a new trial.

VI.

In sum, both of Mr. Williamson's Motions for Reconsideration (Docs. # 293 & # 294) are DENIED. Mr. Williamson's motion for leave to file a reply (Doc. # 302) is GRANTED, and Mr. Williamson's Motion for Default Judgment (Doc. # 300) is DENIED.

This the 10th day of May, 2012.

/s/ N. Carlton Tilley, Jr.
Senior United States District Judge